India Lin Bodien, WSBA #44898
INDIA LIN BODIEN, ATTORNEY AT LAW
2522 North Proctor Street, #387
Tacoma, Washington 98406-5338
Telephone: (253) 212-7913
Fascimile: (253)276-0081
india@indialinbodienlaw.com

Craig J. Ackermann, WSBA #53330
Brian Denlinger, WSBA #53177
ACKERMANN & TILAJEF, P.C.
2602 North Proctor Street, #205
Tacoma, Washington, 98406
Telephone: (310) 277-0614
Facsimile: (310) 277-0635
cja@ackermanntilajef.com
bd@ackermanntilajef.com

*Attorneys for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON AT SPOKANE**

| | |
|---|---|
| MYRRIAH RICHMOND and RAYMOND ROGERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>BERGEY PULLMAN, INC., a Washington Corporation, MARLU SEA-TAC II, LLC DBA RTM SEA-TAC, LLC AKA RTM SEA-TAC II, LLC, a Washington Limited Liability Company, ARBY'S FRANCHISOR, LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO: 2:18-cv-00246-TOR<br><br>**PLAINTIFFS' FIRST AMENDED ANTITRUST CLASS ACTION COMPLAINT FOR:**<br><br>(1) **VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT** [15 U.S.C. § 1, *et. seq.*]; and<br><br>(2) **UNFAIR COMPETITION** [Washington Unfair Business Practices Act, RCW 19.86, *et. seq.*];<br><br>**DEMAND FOR JURY TRIAL** |

*Plaintiffs' First Amended*
*Class Action Complaint*

1

Plaintiffs MYRRIAH RICHMOND ("Plaintiff Richmond") and RAYMOND ROGERS ("Plaintiff Rogers") (collectively "Plaintiffs"), individually and on behalf of all those similarly situated, by and through their counsel, bring this Class Action Complaint ("Complaint") against Defendants BERGEY PULLMAN, INC. ("Bergey"), MARLU SEA-TAC II, LLC DBA RTM SEA-TAC, LLC AKA RTM SEA-TAC II, LLC ("Marlu"), ARBY'S FRANCHISOR, LLC ("Arby's"); and Does 1 through 10 (who collectively shall be referred to hereinafter as "Defendants"), on personal knowledge with respect to themselves and their own acts, and on information and belief as to other matters, alleges as follows:

## I. NATURE OF ACTION

1. Plaintiffs, on behalf of themselves, on behalf of the Washington general public, and as a class action on behalf of Defendants' employees and workers from July 12, 2014 through the present ("Class Members"), seeks millions of dollars in lost wages, plus triple damages, and interest, caused by Defendants' long-standing and illegal mutual non-solicitation agreements (i.e., agreements that Arby's franchisees could not solicit for employment the employees of Arby's and/or of other Arby's franchisees) that were all entered into by Arby's franchises throughout Washington State and that had the intended and actual effect of significantly reducing Class Members' wages and salaries. The genesis of the non-solicitation agreements at issue were franchise agreements between Arby's and its franchisees, and between its franchisees, including, upon information and belief, Bergey and Marlu.

2. This illegal conspiracy among and between Defendants and other Arby's franchisees to not solicit or attempt to solicit one another's employees, in order to thereby suppress their wages, was not known, to Plaintiffs and the Class Members until July 12, 2018, when the Washington State Attorney General ("AG") revealed as part of its then-pending

*Plaintiffs' First Amended Antitrust*
*Class Action Complaint*

investigation into illegal behavior by some of the largest fast food franchises in Washington and the United States, including Arby's, that Arby's would no longer enforce provisions in its franchise agreements that prevented workers from being solicited by other Arby's franchisees. In sum, Defendants engaged in *per se* violations of the Washington Unfair Competition Act and the Sherman Act by entering into non-solicitation agreements for the express purpose of depressing and/or reducing market-based wages and benefit increases for Class Members that are typically associated with the active solicitation of employees and workers in a competitive industry. While protecting and enhancing their profits, Defendants, through their non-solicitation agreements, robbed Class Members millions of dollars-worth of wages for which Plaintiffs and the Class now seek relief.

## II. JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject of this action pursuant to 15 U.S. C. §§ 4 and 16, as well as 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction over the claims brought under the laws of the State of Washington pursuant to 28 U.S.C. § 1367(a), since the matters at the heart of the Washington Unfair Competition Claims form part of the same case or controversy.

4.      Venue as to each Defendant is proper in this judicial district, pursuant to 15 U.S.C. §§ 22 and 28 and 28 U.S. C. §1391(b)(1) and (2), because Defendants transact business and/or has transacted business during the relevant time period within the counties encompassed by the jurisdiction of the United States District Court for the Eastern District of Washington. Defendants do sufficient business in this District to be subject to personal jurisdiction herein, because a substantial part of the events or omissions giving rise to the claims occurred in this District.

*Plaintiffs' First Amended Antitrust
Class Action Complaint*

### III. THE PARTIES

5.      Plaintiff Myrriah Richmond, who at all relevant times was a resident of Washington, is a former employee of Defendant Bergey. Plaintiff Richmond worked as a crewmember at Bergey's Pullman, Washington Arby's store, from approximately April, 2017, to February, 2018. As a result, Plaintiff Richmond was subject to and victimized by the non-solicitation conspiracy between and among the Defendants, resulting in her having lost wages.

6.      Plaintiff Raymond Rogers, who at all relevant times was a resident of Washington, is a former employee of Defendant Marlu. Plaintiff Rogers worked as a crewmember at Marlu's Auburn, Washington Arby's store, and also worked some shifts at Marlu's Kent, Benson Hill, and North Bend Arby's stores. Plaintiff Rodgers worked at Marlu's Arby's stores from approximately December, 2016 to March, 2018. As a result, Plaintiff Raymond was subject to and victimized by the non-solicitation conspiracy between and among the Defendants, resulting in him having lost wages.

7.      Defendant Bergey is a Washington corporation. Defendant Bergey does business in Washington State as Arby's, with its principal place of business located at 1686 South Grand Avenue, Suite 5409 in Pullman, Washington.  Upon information and belief, Defendant Bergey entered into a franchise agreement with Defendant Arby's that contained non-solicitation provisions.

8.      Defendant Marlu is a Washington limited liability company. On information and belief, Defendant Marlu does business in Washington State as "RTM Sea-Tac, LLC" and/or "RTM Sea-Tac II, LLC", which are alter-egos and/or entity names of Marlu. On information and belief, Marlu's principle place of business is located at 1155 Perimeter Center West in Atlanta, Georgia. On information and belief, Marlu operates approximately 30 Arby's stores in

Washington State. Upon information and belief, Defendant Marlu entered into a franchise agreement with Defendant Arby's that contained non-solicitation provisions.

9. Defendant Arby's is a Delaware limited liability company. On information and belief, Defendant Arby's principal place of business is located at 1155 Perimeter Center West in Atlanta, Georgia. Defendant Arby's is a franchisor. Defendant Arby's is in the business of fast food sandwich stores, which it franchises throughout Washington and the United States. On information and belief, Defendant Arby's entered into agreements with its franchisees, including Bergey and Marlu, that contained non-solicitation provisions.

10. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 to 10, inclusive, are currently unknown to Plaintiffs, who therefore sues Defendants by such fictitious names. Does 1 through 10 are the other largest franchisees of Arby's in Washington State based on number of employees employed. Plaintiffs are informed and believes, and based thereon alleges, that each of the Defendants designated herein as a Doe is legally responsible in some manner for the unlawful acts referred to herein in that they are additional co-conspirators. Doe Defendants also include the properly named Marlu Defendant. Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as Does when such identities become known. Defendants and the Does 1-10 shall collectively be referred to as "Defendants."

11. Plaintiffs are informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. Furthermore, Defendants in all

*Plaintiffs' First Amended Antitrust*
*Class Action Complaint*

respects acted pursuant to the mutual non-solicitation agreements that were intended to suppress and had the effect of suppressing wages and salaries for the Class Members.

## IV. **FACTS EVIDENCING THE CONSPIRACY**

12. Defendants had a longstanding agreement to control their employees' wages and mobility by agreeing not solicit each other's employees.

13. The specific provisions of Defendants' franchise agreements that violated federal and state antitrust laws are found at Section 13:1 ("Licensee convenants that, during the term of this License Agreement, and also for a period of twelve (12) months after termination of this License Agreement for any reason, neither Licensee, nor any Guarantor, nor any general partner of Licensee if Licensee is a partnership, nor any shareholder, limited partner, member or other equity owner holding at least fifteen percent (15.0%) interest in Licensee, shall…solicit or attempt to solicit any officer, employee or independent contractor of Arby's or its affiliates or of any Arby's licensee in the Arby's system to terminate or reduce his or her employment or business relationship with Arby's or its affiliates or with such Arby's licensee and shall not assist any other person or entity in such a solicitation. In addition, Arby's covenants that, during the term of this License Agreement, neither Arby's nor any affiliates controlled by Arby's will solicit or attempt to solicit any officer, employee, or independent contractor of Licensee or its affiliates to terminate or reduce his or her employment or business relationship with Licensee or its affiliates and shall not assist any other person or entity in such a solicitation").[1]

14. The mutual non-solicitation agreement itself constituted a *per se* violation of the Sherman Antitrust Act and Washington's Unfair Business Practices Act between Defendants

---

[1] *See In Re: Franchise No Poaching Provisions*, Arby's Franchisor, LLC Assurance of Discontinuance, Case No. 18-2-17225-0SEA, Exhibit B (Dkt. No. 1) (July 12, 2018) (hereinafter "Arby's AOD").

*Plaintiffs' First Amended Antitrust
Class Action Complaint*

from 2013 until it was brought to light by the AG's investigation commencing in 2018 in the course of the AG's investigation into similarly illegal mutual non-solicitation and anti-poach agreements entered into between several of the largest fast food franchisors operating in Washington and the United States.

15.     Upon information and belief, Bergey, Marlu, and other franchisees, that own a total of approximately 57 Arby's stores in Washington state, entered into franchisee agreements with the non-solicitation terms set forth above.

16.     The AG investigated the non-solicitation agreement issued by Arby's to its franchisees and found that Arby's and its franchisees' conduct constituted a contract, combination, or conspiracy in restraint of trade in violation of the Washington Unfair Business Practices Act – Consumer Protection Act, RCW 19.86.030. The AG concluded that "Since 2013, the franchise agreements entered into between Arby's and its franchisees have provided that franchisees subject to such agreements may not solicit employees of Arby's or of other Arby's franchisees to terminate or reduce their employment with Arby's or the other franchisees."[2]

17.     As set forth herein, upon information and belief, all of the Defendants entered into the mutual non-solicitation agreements with the common interest and intention to keep their employees' wage costs down, so that profits continued to rise or at least not be undercut by rising salaries across the industry.  As a result, Defendants engaged in anti-competitive behavior in advancement of a common and illegal goal of profiting at the expense of competitive market-based salaries.

18.     Defendants agreements unreasonably restrained trade in violation of the Sherman Act 15 U.S.C. § 1, *et seq.*,  and constituted unfair competition and unfair practices in violation of

---

[2] Arby's AOD, § 2.2.

*Plaintiffs' First Amended Antitrust*
*Class Action Complaint*

Washington's Unfair Business Practices law, 19.86, *et seq*. Plaintiffs Myrriah Richmond and Raymond Rogers, on behalf of themselves and on behalf of the Class defined herein, seeks to recover the difference between the wages and salaries that Class Members were paid and what Class Members would have been paid in a competitive market, in the absence of Defendants' unlawful agreements, treble damages, attorneys fees, and interest, allowed under the law.

## V. HARM TO COMPETITION AND ANTITRUST INJURY

19. Defendants are in the business of operating fast food sandwich stores where sandwiches and other fast food items are prepared and sold by crewmembers. In order to operate, Defendants owned other stores in Washington and hired crewmembers in their stores to make and sell their sandwiches and fast food items.

20. Non-solicitation agreements create downward pressure on fast food worker wages. Non-solicitation agreements restrict worker mobility, which prevents low-wage workers from being solicited and obtaining higher pay. This artificially suppresses fast food worker wages. In fact, fast food worker wages have remained stagnant.

21. Unrestricted competition and the Free Market are the foundations of the American economic system. That is because "[f]ree and open markets are the foundation of a vibrant economy. Just as competition among sellers in an open marketplace gives consumers the benefits of lower prices, higher quality products and services, more choices, and greater innovation, competition among employer helps actual and potential employees through higher wages, better benefits, or other terms of employment." *DOJ/FTC Antitrust Guidance for HR Professionals*, Oct. 2016, at p. 2.

22. Upon information and belief, Defendants conspired not to actively solicit each other's employees and workers as part of one overarching conspiracy to suppress the

*Plaintiffs' First Amended Antitrust
Class Action Complaint*

compensation of their employees and other Class Members. The desired effect was obtained. Defendants' conspiracy suppressed Plaintiffs' and the Class's compensation and restricted competition in the labor markets in which Plaintiffs and the other members of the Class sold their services. It did so through an overarching agreement concerning mutual non-solicitation.

23.   Concerning the non-solicitation agreements, active solicitations have a significant beneficial impact for individual employees' compensation. As understood by Defendants, active recruitment by rival employers, here other franchisees doing business as Arby's, often include enticing offers that exceed an employee's wages, salary, and/or benefits, thereby incentivizing the employee to leave his or her current employment in order to receive greater compensation for his or her labor, or alternatively, allowing the employee to negotiate increased compensation from his or her current employer. Employees receiving active solicitation offers often inform other employees of the offer(s) they received, spreading information about higher wage and salary levels that can similarly lead to movement for the purposes of higher salary and wages and/or negotiation by those other employees with their current employer or others for greater compensation.

24.   Active solicitation similarly affects compensation practices by employers. A franchisee that actively solicits other franchisees' employees or other workers will learn whether their offered compensation is enough to attract their competitors' employees, and may increase the offers to make their own company and its salaries more competitive in the marketplace. Similarly, companies losing or at risk of losing employees to competitors engaged in active recruitment of employees or workers associated with their competitors may preemptively increase their employees' compensation in order to reduce their competitors' appeal.

*Plaintiffs' First Amended Antitrust Class Action Complaint*

25. Defendants' efforts to maintain internal equity coupled with their non-solicitation agreements ensured that their conspiracy caused the compensation of all their employees to be suppressed.

## VI. INTERSTATE COMMERCE

26. During the Class Period, Defendants employed Plaintiffs and other Class Members in Washington and numerous other states.

27. States compete to attract low wage workers, including fast food workers, leading employment in the industry to cross state lines.

28. Both Defendants and Plaintiffs and other Class Members view labor competition in the industry to be nationwide. Defendants considered each other's wages to be competitively relevant regardless of location, and many Class Members moved between states to pursue opportunities at Defendants' stores.

29. Defendants' conduct substantially affected interstate commerce throughout the United States and caused antitrust injury throughout the United States.

## VII. CLASS ACTION ALLEGATIONS

30. Plaintiffs bring this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of a Class consisting of:

> All persons who were employed by Bergey Pullman, Inc., or Marlu Sea-Tac II, LLC DBA RTM Sea-TAC, LLC AKA RTM Sea-TAC II, LLC, or Arby's Franchisor, LLC, or any of the ten largest franchises of Arby's in Washington State at any time from July 12, 2014 through the conclusion of this action (the "Class Period").[3]

31. Plaintiffs believe there are more than 500 current and former employees in the Class. Given Defendants' systemic failure to comply with United States and Washington laws

---

[3] Plaintiff reserves the right to modify the class definition at a later date to conform to new facts learned, including the properly named entity Defendant(s).

*Plaintiffs' First Amended Antitrust*
*Class Action Complaint*

outlined in this case, the members of the Class are so numerous that joinder of all members is impractical. The Class is ascertainable from either Defendants' employment and hiring records.

32. Plaintiffs' claims are typical of the claims of the members of the Class, because all Class Members are or were employees who sustained damages arising out of (a) Defendants' illegal mutual non-solicitation arrangements in violation of Section 1 of the Sherman Act and RCW 19.86, *et seq.*, that resulted in wage suppression for all of the Class Members; and (b) Defendants' unfair business practices in violation of Washington law.

33. Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs have no conflict of interest with any member of the Class. Plaintiffs have retained counsel competent and experienced in complex class action litigation with the resources and expertise necessary to litigate this case through to conclusion.

34. Common questions of law and fact exist as to all members of the Class, and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to Plaintiffs and Class Members are:

    a. Whether Defendants agreed not to actively solicit each other's employees in positions held by the Class Members;

    b. Whether the mutual non-solicitation agreements between Defendants were *per se* violations of the Sherman Act, 15 U.S.C. § 1, *et seq.*;

    c. Whether Defendants violated the Sherman Act by agreeing to not actively solicit one another's workers in positions held by Class Members;

    d. Whether Defendants violated RCW 19.86, *et seq.*, by entering into agreements to not actively solicit each other's workers in positions held by Class Members;

*Plaintiffs' First Amended Antitrust*
*Class Action Complaint*

  e. whether and the extent to which Defendants' conduct suppressed wages and salaries below competitive levels;

  f. whether Plaintiffs and the other Class Members suffered injury as a result of Defendants' agreements;

  g. whether any such injury constitutes antitrust injury;

  h. whether Class Members are entitled to treble damages; and

  i. the measure of damages suffered by Plaintiffs and the Class.

35. Class action treatment is superior to any alternative to ensure the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individuals would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class Members are readily identifiable from Defendants' employee rosters, payroll records or other company records.

36. Defendants' actions are generally applicable to the entire Class. Prosecution of separate actions by individual members of the Class creates the risk of inconsistent or varying adjudications of the issues presented herein, which, in turn, would establish incompatible standards of conduct for Defendants.

37. Because joinder of all members is impractical, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, the amounts at stake for many members of the Class, while substantial, may not be sufficient to enable them to maintain separate suits against Defendants.

## VIII. STATUTE OF LIMITATIONS AND DEFENDANTS' CONTINUING VIOLATION

38. Defendants' conspiracy was a continuing violation in which Defendants repeatedly invaded Plaintiffs' and Class Members' interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described herein.

39. Before July 12, 2018, Plaintiffs and the members of the Class had neither actual nor constructive knowledge of the pertinent facts constituting their claims for relief asserted herein. Plaintiffs and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of any conspiracy until at the earliest July 12, 2018 when the investigation by the AG into non-solicitation agreements among fast food franchisees/franchisors including Arby's was first revealed publicly. This case is filed within four years of the moment when it was first revealed that the AG investigation had unearthed that Arby's had engaged in mutual non-solicitation agreements with Bergey, Marlu, and other Arby's franchisees.

40. Defendants engaged in a conspiracy that did not give rise to facts that would put Plaintiffs or the Class on inquiry notice that there was a conspiracy among Arby's and franchisees to restrict competition for Class Members' services through non-solicitation agreements.

## IX. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF SECTION ONE OF SHERMAN ACT
### [15 U.S.C. § 1, *et seq.*]

*Plaintiffs' First Amended Antitrust*
*Class Action Complaint*

41. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

42. Defendants, by and through their officers, directors, employees, agents or other representatives, have entered into an unlawful agreement, combination and conspiracy in restraint of trade, in violation of 15 U.S.C. § 1, *et seq*. Specifically, Defendants agreed to restrict competition for Class Members' services through non-solicitation agreements, all with the purpose and effect of suppressing Class Members' compensation and restraining competition in the market for Class Members' services.

43. According to the Department of Justice ("DOJ") and Federal Trade Commission ("FTC"), "…no-poaching agreements, among employers…are *per se* illegal under the antitrust laws." *DOJ/FTC Antitrust Guidance for HR Professionals*, Oct. 2016, at p. 3. "It is unlawful for competitors to expressly or implicitly agree not to compete with one another, even if they are motivated by a desire to reduce costs." *Id*. at p. 2.

44. Defendants' conduct injured Class Members by lowering their compensation and depriving them of free and fair competition in the market for their services.

45. Defendants' agreements are per se violations of the Sherman Act.

46. Plaintiffs seek the relief set forth below, including underpaid and treble damages.

## SECOND CAUSE OF ACTION

**UNFAIR COMPETITION AND UNLAWFUL BUSINESS PRACTICE**
**[Washington Unfair Business Practices Act, 19.86 *et seq.*]**

47. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

*Plaintiffs' First Amended Antitrust*
*Class Action Complaint*

48. Revised Code of Washington Section 19.86, *et seq.*, prohibits unfair or deceptive methods of competition or acts or practices. Specifically, RCW 19.86.030 prohibits contracts, combinations, or conspiracies that restrain trade or commerce.

49. As stated above, the Washington State Attorney General investigated Arby's and determined that the non-solicitation provisions of its franchise agreements, by and between itself and its franchisees, constituted a contract, combination, or conspiracy in restraint of trade in violation of the Washington Unfair Business Practices Act – Consumer Protection Act, RCW 19.86.030.

50. Through its conspiracy and actions as alleged herein, Defendants' efforts to restrain competition for and suppress compensation of their employees through their franchise agreements constitutes unfair competition and unlawful and unfair business practices in violation of the Washington Unfair Business Practices Act, RCW 19.86, *et seq*. Specifically, Defendants agreed to restrict competition for Class Members' services through non-solicitation agreements, all with the purpose and effect of suppressing Class Members' compensation and restraining competition in the market for Class Members' services. Defendants' illegal conspiracy was substantially injurious to Plaintiffs and the Class Members. Defendants' non-solicitation agreements were in commerce and injured the public.

51. Defendants' acts were unfair, unlawful, and/or unconscionable, both in their own right.

52. Defendants' conduct injured Plaintiffs and other Class Members by lowering their compensation and depriving them of free and fair competition in the market for their services, allowing Defendants to unlawfully retain money that otherwise would have been paid to Plaintiffs and other Class Members. Plaintiffs and other Class Members are therefore persons

*Plaintiffs' First Amended Antitrust*
*Class Action Complaint*

who have suffered injury in fact and lost money or property as a result of the unfair competition under RCW 19.86.090.

53. The harm to Plaintiffs and members of the Class in being denied payment for their services in the amount of higher wages and salaries that they would have received in the absence of the conspiracy outweighs the utility, if any, of Defendants' illegal non-solicitation agreements and, therefore, Defendants' actions described herein constitute an unfair business practice or act within the meaning of RCW 19.86, *et seq*.

54. Pursuant to RCW 19.86.090, any person who is injured by a violation of RCW 19.86.030 may bring a civil action to recover actual damages, treble damages, and attorneys' fees and costs.

55. Plaintiffs seek the relief set forth below.

## X.    JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and a class of all others similarly situated, requests that the Court enter an order or judgment against Defendants including the following:

   a. Certification of the class described herein pursuant to Rule 23 of the Federal Rules of Civil Procedure;
   b. Appointment of Plaintiffs Myrriah Richmond and Raymond Rogers as Class Representatives and their counsel of record as Class Counsel;
   c. Compensatory damages in an amount to be proven at trial and trebled thereafter;
   d. Pre-judgment and post-judgment interest as provided for by law or allowed in equity;

*Plaintiffs' First Amended Antitrust*
*Class Action Complaint*

  e. The costs of bringing this suit, including reasonable attorneys' fees and costs;

  f. An incentive award to compensate Plaintiffs Myrriah Richmond and Raymond Rogers for their efforts in pursuit of this litigation;

  g. Interest under Washington law; and

  h. All other relief to which Plaintiffs Myrriah Richmond and Raymond Rogers and the Class may be entitled at law or in equity.

Dated August 22, 2018.

         Respectfully submitted,
         India Lin Bodien, Attorney at Law
         Ackermann & Tilajef, P.C.

         _____
         By: India Lin Bodien, WSBA #44898
         INDIA LIN BODIEN, ATTORNEY AT LAW
         2522 North Proctor Street, #387
         Tacoma, Washington 98406-5338
         Telephone: (253) 212-7913
         Fascimile: (253)276-0081
         india@indialinbodienlaw.com

         Craig J. Ackermann, WSBA #53330
         Brian Denlinger, WSBA #53177
         ACKERMANN & TILAJEF, P.C.
         2602 North Proctor Street, #205
         Tacoma, Washington, 98406
         Telephone: (310) 277-0614
         Facsimile: (310) 277-0635
         cja@ackermanntilajef.com
         bd@ackermanntilajef.com

*Plaintiffs' First Amended Antitrust*
*Class Action Complaint*